# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

MICHAEL MCINERNEY,

      Plaintiff,

v.                                   Case No:   2:15-cv-339-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY”,

      Defendant.

---

## ORDER

Plaintiff Michael McInerney seeks judicial review of the denial of his claim for Social Security disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the briefs and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is AFFIRMED.

## I.   Issues on Appeal[1]

Plaintiff raises four issues on appeal: (1) whether the Administrative Law Judge ("ALJ") failed to fully develop the record regarding Plaintiff's mental impairments when assessing Plaintiff's residual functional capacity ("RFC"); (2)

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), *cited in Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013).

whether substantial evidence supports the ALJ's hypothetical to the Vocational Expert ("VE"); (3) whether substantial evidence supports the ALJ's finding that Plaintiff's impairments did not equal Listing 3.03B; and (4) whether substantial evidence supports the ALJ's credibility determination.

## II.   Procedural History and Summary of the ALJ's Decision

On October 25 and 28, 2011, Plaintiff filed his application for DIB and SSI, respectively.   Tr. 207-19.   Plaintiff's applications allege disability beginning on August 1, 2011.   Tr. 207, 201.   Plaintiff claimed disability due to pulmonary edema, leg cramps, depression, shortness of breath, swollen legs, chest pains, and dizziness. Tr. 277.   The applications initially were denied on December 8, 2011 and upon reconsideration on February 7, 2012.   Tr. 132-33, 138-39, 149-50, 155-56.   Plaintiff requested and received a hearing before the ALJ on August 9, 2013, during which he was represented by an attorney.   Tr. 34.   Plaintiff and VE Donna Taylor testified at the hearing.   *Id.*   The ALJ issued an unfavorable decision on August 30, 2013.   Tr. 14-28.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2013.   Tr. 16.   At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since August 1, 2011, the alleged onset date.   *Id.*   At step two, the ALJ found that Plaintiff has the following severe impairments: morbid obesity; degenerative lumbar disc disease (annular fissuring with minimal bulge at L5-S1); asthma with a history of pulmonary edema; obstructive sleep apnea; type II (non-insulin-dependent) diabetes mellitus;

depression; and anxiety.   Tr. 16.   At step three, the ALJ concluded that Plaintiff's "combination of impairments does not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ."   Tr. 17. Taking into account the effect of Plaintiff's impairments, the ALJ determined that Plaintiff had the RFC to perform sedentary work,[2] except

> [Plaintiff] would need an opportunity to stand up (for example, to stretch) for one minute every 30 minutes. [Plaintiff] does not have the capacity to climb ladders, ropes, or scaffolds at all, or to climb ramps or stairs on more than an occasional basis. He is able to balance, stoop, kneel, crouch, or crawl occasionally. He needs to avoid exposure to dangerous work hazards (unprotected heights and exposed machinery); to concentrated pulmonary irritants, avoid extreme heat, cold, and humidity. Owing to fatigue and pain that may cause distractions, the claimant should be limited to routine uninvolved tasks. He should not be required to work at a production/fast assembly pace.

Tr. 20.   Next, the ALJ found that Plaintiff is unable to perform any of his past relevant work as an automobile mechanic, plumber, machinist, or construction worker.   Tr. 26.   At step five, in considering Plaintiff's RFC, age, education, and work experience and relying on the VE testimony, the ALJ found that Plaintiff is capable of performing other work that exists in significant numbers in the national economy, namely the unskilled jobs of addresser and operator.   Tr. 27.   The ALJ concluded that Plaintiff has not been disabled through the date of the decision.   *Id.* On April 11, 2015, the Appeals Council denied Plaintiff's request for review.   Tr. 1-

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."   20 C.F.R. 404.1567(a), 416.967(a).

5.   Accordingly, the ALJ's August 30, 2013 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on May 19, 2015.   Doc. 1. Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review.   Docs. 18, 19.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. § 404.1520; 416.920.   The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   The Eleventh Circuit has noted that the Commissioner's burden at step five is temporary, because "[i]f the Commissioner presents evidence that other work exists in significant

numbers in the national economy, 'to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.'"   *Atha*, 616 F. App'x at 933 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1278 n. 2 (11th Cir. 2001)).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).   "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."   *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."   *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th

Cir. 1996)).    Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."  *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *Lacina v. Commissioner*, 2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971)).

## IV.   Discussion

### A.   Whether the ALJ failed to fully develop the record regarding Plaintiff's mental impairments when assessing Plaintiff's RFC

Plaintiff first argues that the ALJ failed in her duty to develop the record when she failed to schedule Plaintiff for a psychological consultative examination.   Doc. 21 at 9.   In response, the Commissioner argues that the regulations do not mandate the ALJ to order a consultative examination when, as here, there is sufficient evidence in the record to enable the ALJ to render a decision.   Doc. 24 at 11-14.   Moreover, the Commissioner argues, Plaintiff fails to show that he was prejudiced by the ALJ's

decision not to order a consultative psychological examination.   *Id.*   As explained below, the Court finds Plaintiff's first argument to be without merit.

It is well established that the ALJ has a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Graham v. Apfel,* 129 F.3d 1420, 1422-23 (11th Cir. 1997) (the ALJ has an affirmative duty to develop the record fully and fairly).   The Supreme Court has held that "Social Security proceedings are inquisitorial rather than adversarial.   It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."   *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).   The Social Security regulations also address this obligation and the relevant time period:

> Before we make a determination that you are not disabled, we will develop your complete medical history *for at least the 12 months preceding the month in which you filed your application.*

20 § C.F.R. 416.912(d) (emphasis added); *see also Ellison*, 355 F.3d at 1276 (holding that "the ALJ was in no way bound to develop the medical record for 1999 and 2000" when the claimant's application was filed on December 14, 1998).   Nevertheless, it cannot be overlooked that a claimant bears the burden of proving that he is disabled and is responsible for producing evidence in support of his claim.   *Ellison*, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a); 20 C.F.R. § 416.912(c)).

In determining whether the ALJ failed in her duty to develop the record, the Court is "guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice'" necessitating a remand to the Commissioner for further development of the record.   *Graham*, 129 F.3d at 1423 (citing *Brown v.*

*Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995)).   If the record was sufficient for the ALJ to evaluate Plaintiff's impairments and functional abilities and does not show the kind of gaps in the evidence necessary to demonstrate prejudice, there is no error and the Commissioner's decision must stand.   *See id*.

Here, it is apparent from the ALJ's decision and a review of the record that she committed no error in developing the record.   Instead, the ALJ gave due consideration to facts favorable and unfavorable to Plaintiff's alleged mental impairments.   In her step two analysis, the ALJ pointed out that at the time of filing his application, Plaintiff's medication list did not include any antidepressant or anxiolytic medications.   Tr. 17.   Furthermore, Plaintiff did not claim to struggle with the mental aspects of his daily chores.   *Id.*   Consequently, the ALJ noted, "the agency 'ruled out the need for evaluation of a mental impairment or completion of a PRTF.'"   *Id.*   Next, the ALJ observed that when filing for reconsideration, however, Plaintiff listed increased anxiety as a new physical limitation and opined that "[a]t this point, the agency should have arranged for the claimant to see a consultative examiner."   *Id.* (citing 20 CFR §404.1519 *et seq.*; 20 CFR §416.919 *et seq.*).   The ALJ proceeded to note that instead, "the psychological consultant asked by the agency to review [Plaintiff's] work capacities in February 2012 concluded . . . NO MEDICALLY DETERMINABLE MENTAL IMPAIRMENT."   *Id.*   Regarding this concussion, the ALJ wrote "[i]t is unfair to depend largely on the unremarkable, very short handwritten notes from a *family physician* in order to cast aside an individual's allegations of depression and anxiety . . ."   *Id.* (emphasis in original).

Plaintiff avers that instead of correcting the state agency's error in not ordering a psychological consultative examination, the ALJ proceeded to make an RFC determination based on the limited record on Plaintiff's mental impairments, thereby rendering the RFC determination unsupported by substantial evidence.   Doc. 21 at 9.   Plaintiff fails to recognize, however, that although the psychological consultant's opinion was dated February 2, 2012, in determining Plaintiff's RFC, the ALJ considered additional medical records relating to Plaintiff's alleged mental impairments past this date.   Tr. 21-26.   Thus, although the ALJ determined that as of February 2, 2012 there was insufficient evidence for the agency to make a determination, at which point the agency should have ordered a consultative examination, as of August 30, 2013 – the date of the ALJ's decision – the record contained sufficient evidence concerning Plaintiff's alleged mental impairments to enable the ALJ to render a decision.

The ALJ considered that in April 2, 2012, Plaintiff went to the Lee Mental Health Center, at which time he spoke in an inconsistent manner with respect to his need for special education in the past.   Tr. 24, 488-96.   For instance, although in his Function Report Plaintiff denied ever attending special education in the past, and he reported that he is able to follow written instructions "very well," during his visit to Lee Mental Health he reported a reading disorder, dyslexia, and taking all "ESE classes."   Tr. 273, 278, 488, 493.   Plaintiff also complained of several symptoms never mentioned to the agency or his prior doctors, including severe mood swings, intense range in crowds, weekly anxiety attacks, diminished concentration,

delusions, and auditory hallucinations.   Tr. 24, 491.   In the medical plan, the nurse noted, "monitor for bipolar with psychosis-could be substance induced," as Plaintiff reported a history of alcohol, tobacco, cocaine, and cannabis abuse.   Tr. 492, 495. The ALJ found "even if [Plaintiff's] alleged symptoms plagued [Plaintiff], they owed to his lack of treatment and to his daily use of marijuana."   Tr. 24.   During this visit, Plaintiff was prescribed Prozac and Haldol, and he was not interested in a group therapy referral.   Tr. 495, 96.

The ALJ correctly noted that there is no indication that Plaintiff went to Lee Mental Health Center on a regular basis, as the next medical record on file is dated February 7, 2013.   Tr. 485.   During his visit with his primary care physician, Dr. David. M. Klein, back in April 23, 2012, Plaintiff did not complain of anxiety, depression, or psychotic thoughts, suggesting to the ALJ that Prozac and Haldol helped.   Tr. 25, 479.   In fact, Plaintiff did not return to Dr. Klein's office until August 9, 2012, when he ran out of Prozac and noticed an increase in his anxiety and panic attacks.   Tr. 25, 480.   The ALJ also noted that when Plaintiff visited Lee Memorial Health System in October 2012, he did not complain of depression, anxiety, or paranoid delusions, "notwithstanding his chronic use of marijuana."   Tr. 25, 433-34, 437.

Starting January 2013, Plaintiff began to treat with a new primary care physician, Dr. Raynita D'Souza, after being approved for health insurance.   Tr. 481, 498-99.   During his visits with Dr. D'Suoza in January 9, 2013 and February 13, 2013, Dr. D'Souza did not observe any signs of anxiety or depression.   498-99, 526-

27.   The ALJ correctly noted that "[P]laintiff continued to take his increased dose of Prozac (and Clonopin) for several months, never needing to visit Dr. D'Souza until June 11, 2013," at which time his chief complaints were chronic dyspnea and sleep issues, but not depression or anxiety.   Tr. 26, 525.

Plaintiff has not argued that there are any missing medical records related to his mental health treatment.   Doc. 21.   Instead, his sole argument is that the ALJ erred in failing to order a psychological consultative examination when she determined that the agency should have ordered one during reconsideration of Plaintiff's claim.   Doc. 21 at 9-10.   As noted, however, although Plaintiff reported an increase in his anxiety when he requested reconsideration of the denial of his claim, there was a lack of medical records on file to substantiate the claim.   Thus, the ALJ made her observation for the need to order a consultative examination at that time because she was aware of the agency's duty to develop the record when the record is insufficient to make a claim.   Tr. 17 (citing 20 C.F.R. §404.1519 *et seq.*; 20 C.F.R. §416.919 *et seq.*).   At the time when the ALJ issued her decision, however, the ALJ considered all of the evidence on file related to Plaintiff's mental health treatment to determine Plaintiff's RFC, as previously discussed,.   Nothing in the regulations guarantees a claimant that the agency will purchase a consultative examination, nor is the ALJ mandated to order such an examination when the evidence as a whole is sufficient to make a decision on a claim.   *See e.g.,* 20 C.F.R. §§ 404.1519, 416.919, 416.919a(b), 404.1520b(c).

Here, the lack of a psychological consultative examination does not render the record incomplete or inadequate.   The ALJ's opinion thoroughly evaluated Plaintiff's medical evidence related to his mental health treatment, including evidence that was not available to the psychological consultant in February 2012.   Tr. 21-26.   The record was sufficient for the ALJ to evaluate Plaintiff's mental impairments, and does not show any gaps in evidence necessary to demonstrate prejudice.   The only claimed prejudice by Plaintiff is that although the ALJ determined that Plaintiff's depression and anxiety were severe impairments, she failed to consider to include the effects of these impairments in Plaintiff's RFC.   Doc. 21 at 10.   This argument is wholly without merit.

The RFC is the most that a claimant can do despite his limitations.   *See* 20 C.F.R. § 404.1545(a).   At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC.   *See* 20 C.F.R. § 404.1546(c).   The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. § 404.1545(a).   The claimant's age, education, work experience, and whether he can return to his past relevant work are considered in determining his RFC, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite his impairments.   *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Here, the ALJ considered Plaintiff's testimony, his daily activities, and all of the medical evidence relating to Plaintiff's mental health treatment.   Tr. 21-26. Plaintiff testified at the hearing that he has no problems being around other people. Tr. 19, 57.   As previously noted, at the time of filing, Plaintiff did not report being on any antidepressant or anxiolytic medication.   Tr. 17, 280.   In his Function Report, Plaintiff denied any mental limitations in his ability to complete his daily tasks or his ability to remember, concentrate, or get along with authority figures.   Tr. 273. The ALJ noted in other parts of her opinion that Plaintiff's denial of mental health problems and his positive responses to medication at the time of filing "outweigh the reports of diminished concentration in 2012. . . . At most, [Plaintiff's] depression and anxiety (and morbid obesity) may cause a moderate difficulty in his ability to maintain pace."   Tr. 19.   Accordingly, the ALJ limited his RFC so that Plaintiff "should not be required to work at a production rate/fast assembly pace."   Tr. 20. Based on a thorough review of the ALJ's opinion and the record as a whole, there is substantial evidence to support the ALJ's determination of Plaintiff's RFC.

In conclusion as to this issue, Plaintiff has failed to demonstrate evidentiary gaps in the record which have resulted in prejudice sufficient to justify a remand in this case.   *See Graham*, 129 F.3d 1420, 1423 (11th Cir. 1997).   Nor has Plaintiff shown any reversible error in the ALJ's determination of his mental RFC.

> B.   *Whether substantial evidence supports the ALJ's hypothetical to the Vocational Expert ("VE")*

Next, Plaintiff argues that the ALJ erred by omitting from the hypothetical to the VE Plaintiff's moderate limitations in maintaining concentration, persistence,

and pace, despite the ALJ's finding that Plaintiff's depression and anxiety (and morbid obesity) caused such limitations.   Doc. 21 at 11.   Plaintiff also argues that the ALJ failed to comply with Social Security Ruling ("SSR") 96-9p.   *Id.*   The Commissioner responds that the ALJ's hypothetical implicitly accounted for Plaintiff's moderate limitations.   Doc. 24 at 15.

As the Eleventh Circuit has held, "[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."   *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.1999)).   If the ALJ determines that a claimant has moderate limitation in maintaining concentration, persistence, and pace, the ALJ's hypothetical to the VE must include, *or implicitly account for*, this limitation.   *Winschel*, 631 F.3d at 1181 (emphasis added).   Since *Winschel*, the Eleventh Circuit in unpublished opinions has further addressed the ALJ's express omission from the hypothetical of a moderate limitation in maintaining concentration, persistence, and pace; and has affirmed decisions where the medical evidence supported an implicit accounting for such limitation. *See e.g.*, *Syed v. Comm'r of Soc. Sec.*, 441 F. App'x 632 (11th Cir. 2011); *Neefe v. Comm'r of Soc. Sec.*, 531 F. App'x 1006 (11th Cir. 2013).

In *Syed*, the ALJ found that the plaintiff had moderate difficulties in maintaining concentration, persistence or pace.   441 F. App'x at 634.   The ALJ limited the plaintiff's RFC to "simple, unskilled work that was low-stress, requiring

only the occasional need to make decisions, use judgment, or have contact with the general public." *Id.* The court held that

> although the hypothetical question posed by the ALJ to the VE did not expressly include Syed's impairments, it implicitly accounted for them, and thus, was not improper. *See Winschel*, 631 F.3d at 1180–81. As the record shows, the hypothetical included that there were impairments, and that the individual would require a low-stress work environment. Indeed, the medical evidence demonstrated that Syed could engage in simple, routine tasks and unskilled work despite any limitations, as he was not significantly limited in his ability to complete simple work-like procedures. The medical evidence also showed that Syed understood and followed specific, multi-step instructions, and was cooperative and responsive. Thus, Syed was only moderately limited in his work capabilities, could accept instruction and criticism, and was not significantly limited in his ability to complete simple work-like procedures.

*Id.*

> In *Neefe*, the Eleventh Circuit explained the *Winschel* decision as follows:
>
> In *Winschel,* we followed the example of many other circuits, and rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting hypothetical questions to simple, routine tasks or unskilled work. *Id.* However, we clarified that:
>
>> [W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.
>
> *Id.* at 1180. In *Winschel*, we highlighted that the ALJ did not indicate that medical evidence suggested the plaintiff's ability to work was unaffected by this limitation, nor did the ALJ otherwise implicitly account for the limitation in the hypothetical question. *Id.* at 1181. So, we concluded that, because the ALJ should have explicitly included Winschel's moderate limitation in maintaining concentration, persistence, and pace in the hypothetical question to the vocational

expert, the vocational expert's testimony was not substantial evidence that supported the ALJ's conclusion. *Id.*

531 F. App'x at 1007.

Here, as partially noted in the previous section, in evaluating the four broad functional areas, otherwise known as the "paragraph B" criteria, the ALJ's opinion states:

> The third functional area, "concentration, persistence, or pace," refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.   Again, [Plaintiff's] denial at the time of filing (and [Plaintiff's] positive response to medication) outweigh the reports of diminished concentration in early 2012 (Exs. 4E, 9F).  At most, [Plaintiff's] depression and anxiety (and morbid obesity) *may cause a moderate difficulty in his ability to maintain pace.*"

Tr. 19 (emphasis added).   In her RFC discussion, the ALJ further found that Plaintiff "would not struggle to handle a low stress unskilled position."   Tr. 21.   She then reiterated that Plaintiff did not report any issues with his ability to follow instructions, remember items, or concentrate.   Tr. 24.   To the contrary, Plaintiff reported being able to handle changes in his routine "very well."   Tr. 24.   The ALJ noted that at the time of filing, Plaintiff "was able to do unskilled work tasks, so long as these tasks did not require him to work at a fast pace."   Tr. 24.   Accordingly, the ALJ limited his RFC so that Plaintiff "should not be required to work at a production rate/fast assembly pace."   Tr. 20.   The Court is more than satisfied that the ALJ's hypothetical to the VE implicitly accounted for the moderate limitations of Plaintiff's concentration, persistence, and pace and that the record provides substantial evidence to support her conclusion that at most, Plaintiff's depression and anxiety

along with his morbid obesity may cause a moderate difficulty in his ability to maintain pace.   In fact, Plaintiff points to no evidence to support his argument except his subjective complaints of anger, fatigue, low energy, paranoia, poor concentration, panic attacks, and auditory and visual hallucinations during his visit to Lee Mental Health on April 2, 2012.   Doc. 21 at 10 (citing Tr. 491).   As the ALJ noted, Plaintiff never mentioned most of these symptoms to the agency or his prior doctors, and in fact, there is no medical evidence to corroborate these symptoms, and Plaintiff points to none.

Regarding Plaintiff's contention that the ALJ failed to comply with SSR 96-9p, this ruling discusses the implications of an RFC for less than a full range of sedentary work.   SSR 96-9p.   The ruling states that an RFC of less than a full range of sedentary work reflects very serious limitations and is very rare, but it does not necessarily equate to a finding that a person is disabled.   *Id.*   Additionally, a substantial loss of the ability to meet any one of several basic mental work-related demands will substantially erode the unskilled sedentary occupational base and would justify a finding a disability.   *Id.* (emphasis added).   Because the extent of erosion of the unskilled sedentary occupational base, however, will vary on the individual's remaining capacities, the ALJ may use the resources of a VE in determining the availability of other work.   Here, the ALJ consulted a VE in determining the extent of the erosion of the occupational base.   Tr. 66-72.   The ALJ posed a hypothetical to the VE, which the Court determines to be supported by substantial evidence, and the VE testified that based on the hypothetical, an

individual could perform work at an unskilled level, namely the jobs of addressor and operator.   Tr. 69-71.   Plaintiff has failed to meet his burden that he cannot perform these jobs.

> C.     *Whether substantial evidence supports the ALJ's finding that Plaintiff's impairments did not equal Listing 3.03B*

Plaintiff's third argument is that the ALJ committed reversible error in failing to find that Plaintiff's chronic pulmonary problems equal listing 3.03B.   Doc. 21 at 13.   Moreover, Plaintiff argues, the ALJ failed to correctly articulate why Plaintiff's obesity, in combination with his other pulmonary impairments, does not equal a listing.   Doc. 21 at 15-16.

As noted above, at step three of the five-step sequential evaluation process, the Commissioner considers whether a claimant suffers from a medical condition that meets or equals a "listed impairment," or "listing."   See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The listings describe impairments that the Commissioner considers severe enough to prevent a person from doing "any gainful activity, regardless of his or her age, education, or work experience."   *See* 20 C.F.R. § 404.1625(a).   If an adult's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. . . ."   *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing *Bowen,* 482 U.S. at 141).   The Eleventh Circuit has described how the standard is met or equaled:

> In order to *meet* a listing, the claimant must (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific

criteria of the applicable listing and the duration requirement. A diagnosis alone is insufficient. [] In order to *equal* a listing, the medical findings must be at least equal in severity and duration to the listed findings.

*Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

Plaintiff has the burden of establishing his impairment meets or equals a listing. *Carpenter v. Comm'r*, 614 F. App'x 482, 487 (11th Cir. 2015) ("Indeed, at this step of the disability inquiry, the burden of proof remains squarely on [plaintiff], and the Commissioner's findings as to whether he carried that burden are conclusive and must be affirmed if supported by substantial evidence, even if those findings are not supported by a preponderance of the evidence in the record") (citations omitted); *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). Plaintiff must produce specific medical findings that satisfy all the criteria of a particular listing. 20 C.F.R. § 404.1520(a)(4); *Wilkinson*, 847 F.2d at 662. In doing so, Plaintiff must have a diagnosed condition that is included in the listings. *Id.* Diagnosis of a listed impairment, however, is not enough; as the claimant also must provide objective medical reports documenting that his impairment meets the specific criteria of the applicable listing. *Id.*; *accord Wilson*, 284 F.3d at 1224. Further, "[a]n impairment that manifests only some of [the specific] criteria [of the applicable impairment], no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530.

The listing that is at issue in this case, Listing 3.03B, provides:

3.03 Asthma. With:

B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer

than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, §3.03B.   Moreover, 3.00C defines asthma attacks as follows:

> Attacks of asthma, episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum), or respiratory failure as referred to in paragraph B of 3.03, 3.04, and 3.07, are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 3.00C.

The ALJ specifically considered whether Plaintiff's impairments met or equaled the listings, specifically addressing Listing 3.03B, and she found that they did not.   Tr. 18.   The ALJ found that Plaintiff "did not seek physician intervention for an asthma attack 'at least once every 2 months or at least six times a year.'"   Tr. 19.   She further found that even when Plaintiff went to the emergency room for an asthma attack, "the attack was preceded by a loss of access to his inhaler."   *Id.*; *see also* Tr. 22 (explaining, for instance, that on July 27, 2011 Plaintiff ran out of a five-day supply of Prednisone shortly before he went to the hospital and he left the emergency room three hours later with an antibiotic, steroid, and inhaler).   The medical evidence in the record supports the ALJ's decision, and the ALJ discussed these records in her decision.   *See e.g.,* Tr. 19.   Plaintiff has failed to meet his burden that he meets *all* the criteria of Listing 3.03B, as he is required to do. *Sullivan*, 493 U.S. at 530.

In support of his argument, Plaintiff relies on "six documented exacerbations of his asthma symptoms during the 12 month period beginning in December 2010." Doc. 21 at 14.   Those instances cited by Plaintiff are dated December 28, 2010; March 28, 2011; July 19, 2011; July 27, 2011; October 6, 2011; and October 26, 2016.   *Id.*; Tr. 330, 336, 341, 345, 358, 369.   Plaintiff fails to show, however, that his "attacks" were prolonged symptomatic episodes lasting one or more days and requiring intensive treatment in a hospital, emergency room or equivalent setting.   As the Commissioner points out, of the six occasions Plaintiff cites during which he went to the hospital for his conditions, he only was admitted to the hospital once; during the remaining occasions, Plaintiff was discharged the same day after he was given DuoNeb or Combivalent, Proventil, or Albuterol inhalers.   Tr. 330-31, 336-37, 342-43, 345-47, 358-61.   In fact during his March 29, 2011 visit, Plaintiff went to Lee Memorial Health System for complaints of shortness of breath and chest discomfort. Tr. 336.   The doctor noted that Plaintiff had a history of smoking one pack of cigarettes per day for the previous twenty-one years and that he occasionally smokes marijuana.   *Id.*   The doctor suggested to Plaintiff that he stop smoking and try his best to lose weight.   Tr. 337.   During this visit, Plaintiff was merely prescribed hypertension medication and discharged the same day.   *Id.*   Moreover, the ALJ noted, and the record shows, that Plaintiff routinely admitted to non-compliance with doctor's orders to cease smoking tobacco and marijuana.   *See e.g.*, Tr. 22, 23, 336, 342, 386, 539.   Accordingly, Plaintiff fails to show that his medical findings were at least equal in severity and duration to the listed findings.   *Wilkinson*, 847 F.2d at

662; *see also Johnson v. Barnhart*, 148 F. App'x 838, 842 (11th Cir. 2005) (holding that although the claimant used a nebulizer and took asthma medication daily, the evidence did not support a conclusion that this treatment was intensive or that her asthma flare-ups were as severe as the attacks that required hospitalization).

Plaintiff further contends that the ALJ failed to adequately evaluate his obesity in combination with his pulmonary impairments.   Doc. 21 at 14.   As support, Plaintiff argues that although the ALJ's opinion recited the information provided by SSR 02-1p, she failed to incorporate the policy into her analysis and neglected to discuss the effect of Plaintiff's obesity on his individual or combination of impairments.   *Id.* at 15.   The Court finds that the ALJ properly considered Plaintiff's obesity in accordance with SSR 02–1p when making the disability determination.   The ALJ specifically discussed the requirements of SSR 02–1p in her step three analysis and on several occasions discussed Plaintiff's weight and the resulting limitations caused by it throughout her RFC opinion.   Tr. 18-26.   As the Commissioner points out, in addition to the medical evidence, the ALJ considered the opinion of the state agency medical consultant, who considered Plaintiff's obesity in finding that Plaintiff could perform a limited range of light work.   Tr. 21 n.2, 112-15. The ALJ noted that the medical consultant made this finding without an opportunity to review all of the evidence pertaining to Plaintiff's health since August 2011.   Tr. 21 n.2.   Thus, she found "[i]t is reasonable, in light of the more recent evidence, to go further," and she gave his finding some weight.   *Id.*   Although the record indicates

that Plaintiff had health problems, these problems did not amount to a listing-level impairment.

>    D.   *Whether substantial evidence supports the ALJ's credibility determination*

Plaintiff lastly argues that the ALJ erred in evaluating Plaintiff's statements regarding Plaintiff's need to elevate his legs due to his peripheral edema.   Doc. 21 at 16-17.   Plaintiff further argues that the ALJ disregarded the ineffectiveness of Plaintiff's medications in relieving his fluid retention.   *Id.*

When assessing the credibility of subjective complaints, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged.   *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson*, 284 F.3d at 1225-26; *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work.   *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561.   The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause.   *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).   "If the ALJ

discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted).

Here, after consideration of the evidence, the ALJ found that the physical and mental effects of Plaintiff's various impairments could reasonably be expected to require his assignment to a very narrow range of sedentary work.   Tr. 21.   However, the ALJ found the record evidence "does not fully support [Plaintiff's] testimony with regard to the frequency, intensity or limiting effects of his symptoms."   *Id.*   She proceeded, "[o]f particular note, the evidence does not suggest that he would need to keep his legs elevated constantly – or to lie down several times per day – in order to get through a normal eight-hour shift."   *Id.*   The ALJ found several other statements by Plaintiff to be less than credible, and supported her findings with discussion of the objective evidence of record.   Tr. 21-26.

Plaintiff contends that because of his struggle with peripheral edema, and frequent bilateral swelling of his knees and ankles, he is forced to elevate his legs to relieve some of the pain and swelling.   Doc. 21 at 17.   Plaintiff further contends that the ALJ mischaracterized his testimony when she deemed it as a "constant" need to elevate his legs.   *Id.*

At the hearing, Plaintiff testified that if he goes to the store, his girlfriend usually drops him off at the front door of the store and Plaintiff uses a cart to ambulate around the store.   Tr. 48.   Regarding his edema, during the hearing

Plaintiff testified that his legs, ankles, knees, and feet swell up to the point where he is unable to wear shoes.   Tr. 51.   The ALJ inquired as to the frequency of this occurrence, and the exchange followed:

> Plaintiff:   If I spend a lot of time sitting up -- you know, upright, even in the cart, it -- they swell up.   They blow up like balloons.
>
> ALJ:   … if you spend a lot of time on your feet, do you mean spend a lot of time on your feet, for instance, walking from the entrance to the store to the buggy or --
>
> Plaintiff:   Yeah, from the entrance of the store to the buggy.
>
> ALJ:   So that's what you would consider spending a lot of time --
>
> Plaintiff:   Yeah, it hurts. I'm in -- I'm in pain every day. I can't -- I can't -- I can't -- it's just -- it's horrible.

Tr. 52.   Later in the hearing, Plaintiff testified that in order to relieve some of the pain due to the swelling, he elevates his legs over his head for about half hour at a time, "on and off during the day," two to three times per week.   Tr. 65.

Based on Plaintiff's testimony, the Court is not persuaded that the ALJ mischaracterized Plaintiff's statements.   Moreover, substantial evidence supports the ALJ's credibility determination.   As the Commissioner points out, one out of the three treatment notes relied upon by Plaintiff as support that he struggled with edema throughout the period at issue shows that Plaintiff was "doing well. Edema reduced."   Doc. 24 at 23, Tr. 390.   Additionally, the record reflects that Plaintiff did not report any symptoms of his edema on multiple medical visits, and physical examinations as late as July 24, 2013 showed no edema.   Doc. 24 at 23, Tr. 330-31, 346, 359, 369, 437, 528, 537, 540.   The ALJ cited to these records in her discussion

of Plaintiff's RFC and credibility determination.   Tr. 24-25.   The ALJ also compared Plaintiff's statements with his daily activities (such as pushing a truck and performing tile work), his work activity (such as his attempt to work part time), and his medication treatment.   Tr. 22, 25.   The Court also is not persuaded by Plaintiff's argument that the ALJ disregarded the ineffectiveness of Plaintiff's medication in eliminating the fluid from his legs.   Doc. 21 at 17.   At the hearing, Plaintiff testified that he does not take any medication for the swelling in his legs.   Tr. 65.   However, as noted, Plaintiff was reported "doing well" after taking Lasix.   Tr. 390.

### V.   Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and her determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.      The decision of the Commissioner is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 7th day of September, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies: Counsel of record